IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EARLE BRUCE,

      Petitioner,

v.                                        CASE NO. 4:15-cv-304-WS-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner initiated this case by filing a *pro se* Petition for a Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254, stemming from his
conviction for sexual battery with a deadly weapon. (ECF No. 1.)
Respondent has filed a response and appendix with relevant portions of
the state-court record, arguing that the Petition should be denied. (ECF No.
10.) Petitioner filed a reply, (ECF No. 14), and the Petition is therefore ripe
for review. Upon due consideration of the Petition, the response, the state-
court record, and the reply, the undersigned recommends that the Petition
should be denied.[1]

---

[1] The Court has determined that an evidentiary hearing is not warranted because
the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

## I. Summary of State Court Proceedings

In November 2006 Petitioner was charged in Leon County with one count of sexual battery with a deadly weapon in violation of Fla. Stat. § 794.011(3). (ECF No. 10-1 at 39.) Petitioner proceed to trial and was convicted on March 6, 2007. (*Id.* at 68, 338–39.)

Petitioner filed a motion for new trial eight days later arguing that the trial court erroneously restricted full cross-examination of the alleged victim concerning favors she had received from the State Attorney's Office in her own pending cases. (*Id.* at 70–71.) Petitioner argued that a full and effective cross-examination of the victim was of paramount importance because the trial essentially pitted the credibility of Petitioner against the credibility of the alleged victim, so any improper infringement of that cross-examination deprived Petitioner of a fair trial. The trial court denied Petitioner's motion for a new trial on April 4, 2007. (*Id.* at 77.)

The trial court then sentenced Petitioner on April 24, 2007, to fifteen years' imprisonment, rather than the twenty-five years minimum mandatory under Fla. Stat. § 794.0115 (2006), for dangerous sexual felony offenders. (*Id.* at 82–90; ECF No. 10-2 at 58–69.)[2]  Both the State and Petitioner

---

[2] On March 12, 2007, the State filed a motion to declare Petitioner to be a dangerous sexual felony offender pursuant to § 794.0115. (ECF No. 10-1 at 69.)

appealed to the First DCA. (ECF No. 10-1 at 91–92, 99–100.)[3]

On August 20, 2008, the First DCA issued a per curiam opinion reversing Petitioner's sentence and remanding for the trial court to re-sentence Petitioner as a dangerous sexual felony offender, holding that a prior conviction is not a prerequisite for a defendant to qualify as a dangerous sexual felony offender under § 794.0115(2)(b). (ECF No. 10-2 at 164–66.)[4] The trial court thereafter re-sentenced Petitioner on October 16, 2008, to the statutory minimum of twenty-five years' imprisonment as a dangerous sexual felony offender. (ECF No. 10-1 at 7; ECF No. 10-2 at 270–77.)

Counsel for appellant filed an *Anders* brief on January 13, 2009, conceding there was no good-faith argument for reversible error. (ECF No. 10-2 at 302–08.) Accordingly, the First DCA provided Petitioner thirty days

---

Petitioner objected to the State's motion, arguing that he did not have a prior conviction and § 794.0115 was meant to punish repeat offenders. (*Id.* at 78.)

[3] Petitioner also filed a motion to correct sentencing error under Fla. R. Crim. P. 3.800(b)(2) on August 16, 2007, arguing that the sentencing score sheet erroneously stated that Defendant was sentenced pursuant to a plea when in fact he was sentenced following a jury trial. (ECF No. 10-2 at 73–75.) The trial court granted the motion on August 21, 2007, and directed that the score sheet be corrected to reflect that Petitioner's conviction resulted from a jury trial and not a plea. (*Id.* at 76–79.)

[4] Petitioner also filed a notice to invoke discretionary jurisdiction of the Florida Supreme Court on August 17, 2009. (ECF No. 10-2 at 173–74.) The Florida Supreme Court dismissed the cause on September 1, 2009, however, because Petitioner's notice was not timely filed. (*Id.* at 175.)

to file a *pro se* initial brief. (*Id.* at 309.) Petitioner filed his pro se initial brief on March 18, 2009, arguing: (1) It was "cruel and unusual punishment" to impose a twenty-five year minimum mandatory sentence on remand after the trial court's imposition of a fifteen-year sentence; and (2) Section 794.0115 is unconstitutional on its face and as applied to Petitioner. (*Id.* at 311–26.) Petitioner also filed a motion to certify conflict pursuant to Fla. R. App. P. 9.330(a). (*Id.* at 327–31.)[5]

On July 31, 2009, the First DCA per curiam affirmed Petitioner's conviction and sentence without written opinion and issued a separate order denying his motion to certify conflict. (*Id.* at 333–34.) The mandate followed on August 26, 2009. (*Id.* at 335.)

Petitioner then filed a motion for postconviction relief on June 2, 2010, followed by an amended motion for postconviction relief on August 6, 2010. (*Id.* at 346–423.) Petitioner also filed a motion to supplement his amended motion for postconviction relief on July 29, 2011, which the trial court granted on August 11, 2011. (*Id.* at 425–447.)

The Court eventually granted an evidentiary hearing on Petitioner's

---

[5] Petitioner filed a petition for writ of habeas corpus pursuant to § 2254 in federal court on July 2, 2009. (ECF No. 10-2 at 338.) He then filed a motion to dismiss his petition without prejudice on February 25, 2011, which the court granted on March 9, 2011. (*Id.* at 341.)

amended motion for postconviction relief and supplemental motion for postconviction relief and appointed counsel to represent Petitioner at the hearing. (*Id.* at 458, 472, 491–92; ECF No. 10-3 at 1–71.) At the conclusion of the evidentiary hearing on June 22, 2012, the trial court denied Petitioner's amended motion for postconviction relief and supplemental motion for postconviction relief on the merits. (ECF No. 10-2 at 491–92; ECF No. 10-3 at 1–71.) The trial court then issued a written order denying Petitioner's amended motion for postconviction relief and supplemental motion for postconviction relief on the merits on June 26, 2012. (ECF No. 10-2 at 475–76.) Petitioner thereafter appealed to the First DCA. (ECF No. 10-3 at 74–118.) On February 18, 2014, however, the First DCA per curiam affirmed without written opinion. (*Id.* at 180.) The mandate followed on March 18, 2014. (*Id.* at 181.)

In the meantime, on December 27, 2012, Petitioner filed a petition for writ of habeas corpus in the First DCA. (ECF No. 10-3 at 183–97.) The First DCA per curiam dismissed the petition on January 17, 2013, pursuant to *Baker v. State*, 878 So. 2d 1236 (Fla. 2004). (*Id.* at 264.)

On January 15, 2014, Petitioner filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). (*Id.* at 268–78.) The trial

court denied the motion on March 28, 2014, pursuant to *Bruce v. State*,

988 So. 2d 715 (Fla. 1st DCA 2008). (*Id.* at 279–80.) Petitioner appealed

the denial to the First DCA. (*Id.* at 290–342.) On August 27, 2014 the First

DCA per curiam affirmed without written opinion. (*Id.* at 348.) Petitioner

then filed a motion for certification and a motion for rehearing on

September 11, 2014. (*Id.* at 349–55.) The First DCA denied both motions

on October 13, 2014. (*Id.* at 356.) The mandate followed on October 29,

2014. (*Id.* at 357.)

Petitioner next filed a petition for writ of habeas corpus in the

Supreme Court of Florida on November 14, 2014. (*Id.* at 359–84.) On

February 9, 2015, the Supreme Court of Florida denied the petition as

procedurally barred to the extent Petitioner sought review of his sentence,

and denied the petition to the extent he sought review of the decision in

*Bruce*, 988 So. 2d at 715. (*Id.* at 386.)

Petitioner thereafter filed the instant Petition in this Court on June 5,

2015. (ECF No. 1.)

## II.  Section 2254 Standard of Review

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The

decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404–06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 362). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Williams,* 529 U.S. at 412–13. "Avoiding these pitfalls [described in

*Williams v. Taylor* ] does not require citation of our cases-indeed, it does

not even require *awareness* of our cases, so long as neither the reasoning

nor the result of the state-court decision contradicts them." *Early v. Packer,*

537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state

court's decision was unreasonable must be assessed in light of the record

the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court

should address the "unreasonable application of law" and the

"unreasonable determination of facts" tests. The court acknowledged the

well-settled principle that summary affirmances, such as the Florida First

District Court of Appeal's in this case, are presumed adjudicated on the

merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v.*

*Richter*, 526 U.S. 86 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278

F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial

opinion are not the same thing," and the Supreme Court has confirmed that

determining whether the state court unreasonably applied the law or

unreasonably determined the facts requires only a decision, not an opinion.

*Id*. at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court

has never squarely addressed whether under the "unreasonable

application" test a federal habeas court "looks exclusively to the objective

reasonableness of the state court's ultimate conclusion or must also

consider the method by which the state court arrives at its conclusion." *Id.*

at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002)

(summarizing the emerging circuit split)). The Eleventh Circuit concluded

that district courts must apply the plain language of § 2254(d) and answer

the "precise question" raised in a claim based on the state court's ultimate

legal conclusion, and should not "evaluate or rely upon the correctness of

the state court's process of reasoning." *Id.* at 1291. In short, the court

stated, "the statutory language focuses on the result, not on the reasoning

that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard

plays a limited role in habeas review because the district court considers

the reasonableness of the trial court's fact finding only to the extent that the

state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas

court can consider the full record before it to answer "the only question that

matters[:]" whether the state court's decision was objectively unreasonable.

*Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy."

*Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to

provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect

on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a

defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694. A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of

counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The

standard is not whether an error was committed, but whether the state

court decision is contrary to or an unreasonable application of federal law
that has been clearly established by decisions of the Supreme Court. 28
U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not
enough, because "[f]or purposes of § 2254(d)(1), an unreasonable
application of federal law is different from an incorrect application of federal
law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a
strong case for relief does not mean the state court's contrary conclusion
was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was
denied on the merits by the state courts, a federal habeas court "must
determine what arguments or theories supported or, [if none were stated],
could have supported, the state court's decision; and then it must ask
whether it is possible fairminded jurists could disagree that those
arguments or theories are inconsistent with the holding in a prior decision
of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree
about whether the state court's denial of the claim was inconsistent with an
earlier Supreme Court decision, federal habeas relief must be denied. *Id*.
Stated the other way, only if "there is no possibility fairminded jurists could
disagree that the state court's decision conflicts with [the Supreme] Court's

precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id*. at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### III.  Discussion

***A.   Ground One: "Counsel failed, at resentencing, to argue that Bruce does not qualify for enhancement because the applicable requisite predicate conditions under section 794.0115(2)(a)–(d) are not present in this case to legally apply the enhancement violating Bruce's Fifth, Sixth, and Fourteenth Amendment rights."***

Petitioner claims re-sentencing counsel was ineffective for failing to argue that Petitioner did not qualify as a dangerous sexual felony offender under § 794.0115(2). Petitioner argues he was ineligible for the sentence enhancement under § 794.0115 because only one of the four predicate conditions are present in his case.

Ground one is unexhausted and procedurally barred. Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan*, 526 U.S. at 842 ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state court remedies, the petitioner must fairly present the federal claims to the state court in order to give the State the opportunity to pass upon and correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). Failure to exhaust state remedies may result in the claim being procedurally defaulted. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir. 1983).

Petitioner never presented this claim to the state court and cannot do so at this juncture. *See* Fla. R. Crim. P. 3.850(b) (a state postconviction motion must be filed within two years after the judgment and sentence became final). This claim is therefore also procedurally defaulted.

A procedurally defaulted claim like Petitioner's can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test

must be something external to the petitioner, something that cannot fairly

be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753

(1991). Attorney error that constitutes ineffective assistance of counsel

violative of the Sixth Amendment can render "cause." *Murray v. Carrier*,

477 U.S. 478, 487 (1986). But, an ineffective assistance of counsel claim

must generally be presented to the state courts as an independent claim

before it can be used to establish cause for a procedural default. *Edwards*

*v. Carpenter*, 529 U.S. 446, 452 (2000) (citing *Murray*, 477 U.S. at 489). In

such case, unless the prisoner can satisfy the cause and prejudice

standard for the procedurally defaulted ineffective assistance of counsel

claim, the ineffective assistance of counsel claim cannot serve as cause for

another procedurally defaulted claim. *Id.* at 453. To show prejudice, the

petitioner must show that there is at least a reasonable probability that the

result of the proceeding would have been different had the constitutional

violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th

Cir. 2003).

Second, the petitioner may show that enforcing the procedural

default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d

at 1190. To show a fundamental miscarriage of justice, the petitioner must

show that in light of new evidence, no reasonable juror would have

convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has failed to demonstrate either cause and prejudice for the default or a fundamental miscarriage of justice. In his reply, Petitioner argues that his appellate attorney's failure to raise this claim on appeal constitutes ineffective assistance of counsel, and therefore, "cause" to excuse his default. While ineffective assistance of counsel can demonstrate cause for the default in some situations, it cannot do so here.

Petitioner's ineffective assistance of appellate counsel claim with respect to failing to raise his claim in state proceedings is itself procedurally defaulted. His claim of ineffective assistance of appellate counsel was never presented to the state courts as an independent claim and he cannot return to state court to do so at this juncture. *See* Fla. R. Crim. P. 3.850(b);[6] Fla. R. App. P. 9.141(d)(5) (habeas petitions alleging ineffective assistance of appellate counsel on direct review shall not "be filed more than 4 years after the judgment and sentence become final on direct review").[7]

He has also failed to show the requisite cause and prejudice for his

---

[6] Although there are several exceptions to the time limitations for filing a 3.850 motion, none would appear to apply in Petitioner's case. *See* Fla. R. Crim. P. 3.850(b).

[7] Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel. *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000).

procedural default. Nothing suggests that Petitioner failed to assert his ineffective assistance of appellate counsel claim in state proceedings because of some external factor. *See Coleman*, 501 U.S. at 753 ("cause" must be something external to the petition that cannot fairly be attributed to him). Because Petitioner cannot show cause for his default, the Court need not proceed to the issue of prejudice. *See Ward v. Hall*, 592 F.3d 1144 (11th Cir. 2010) ("It is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice.").

Petitioner cannot satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of appellate counsel claim, so the ineffective assistance of appellate counsel claim cannot serve as cause for his procedurally defaulted ineffective assistance of re-sentencing counsel claim. Petitioner also does not set forth any new evidence evidencing that no reasonable juror would have convicted him. He therefore cannot demonstrate a fundamental miscarriage of justice to excuse his procedural default. *See Mize*, 532 F.3d at 1190. Accordingly, he is not entitled to relief on ground one.

Even assuming, however, ground one was exhausted, it is without merit. At the time, § 794.0115(2) provided:

Any person who is convicted of a violation of s. 787.025(2)(c);

s. 794.011(2), (3), (4), (5), or (8); s. 800.04(4) or (5); s. 825.1025(2) or (3); s. 827.071(2), (3), or (4); or s. 847.0145; or of any similar offense under a former designation, which offense the person committed when he or she was 18 years of age or older, and the person:

(a) Caused serious personal injury to the victim as a result of the commission of the offense;

(b) Used or threatened to use a deadly weapon during the commission of the offense;

(c) Victimized more than one person during the course of the criminal episode applicable to the offense;

(d) Committed the offense while under the jurisdiction of a court for a felony offense under the laws of this state, for an offense that is a felony in another jurisdiction, or for an offense that would be a felony if that offense were committed in this state; or

(e) Has previously been convicted of a violation of s. 787.025(2)(c); s. 794.011(2), (3), (4), (5), or (8); s. 800.04(4) or (5); s. 825.1025(2) or (3); s. 827.071(2), (3), or (4); s. 847.0145; of any offense under a former statutory designation which is similar in elements to an offense described in this paragraph; or of any offense that is a felony in another jurisdiction, or would be a felony if that offense were committed in this state, and which is similar in elements to an offense described in this paragraph,

is a dangerous sexual felony offender, who must be sentenced to a mandatory minimum term of 25 years imprisonment up to, and including, life imprisonment.

On appeal the First DCA expressly stated,

[s]ubsections (a)–(e) are disjunctive, as evidenced by the use of the term "or" before section (2)(e). Because those

> subsections are disjunctive, the defendant must have been convicted of a crime listed in section (2) and meet *one* of the requirements of subsections (a)–(e). Thus, pursuant to section 794.0115, a defendant who is convicted of violating section 794.011(3) (sexual battery with a deadly weapon or with force likely to cause serious person injury), and who used or threatened to use a deadly weapon during the commission of the offense, is a dangerous sexual felony offender.

(ECF No. 10-2 at 165) (emphasis added); *Bruce v. State*, 988 So. 2d 715, 716 (Fla. Dist. Ct. App. 2008). Accordingly, the First DCA reversed Petitioner's sentence and remanded to the trial court so Petitioner could be re-sentenced to the mandatory minimum term of 25 years' imprisonment under § 794.0115(2). Re-sentencing counsel did not render deficient performance by failing to raise an issue on remand from the First DCA that the First DCA had expressly determined. Nor was Petitioner prejudiced by counsel's failure to raise an issue that the First DCA already had expressly determined. Petitioner has failed to demonstrate that re-sentencing counsel rendered ineffective assistance by failing to argue that Petitioner did not qualify as a dangerous sexual felony offender. Ground one therefore fails on the merits.

**B.     Ground Two: "The trial court abused its discretion in not allowing Bruce's defense counsel to cross-examine the alleged victim to prove motive to lie, by asking her if she bonded out of jail—conveniently—the day before the trial in this case, in violation of the Confrontation Clause of the Sixth Amendment."**

Petitioner claims in ground two that the trial court abused its discretion in not allowing defense counsel to cross-examine the alleged victim on whether she bonded out of jail the day before Petitioner's trial. Petitioner says that the State agreed to allow the alleged victim to bond out of jail in her case the day before Petitioner's trial, which Petitioner claims would have shown that the alleged victim had motive to lie at Petitioner's trial. Petitioner says the trial court's refusal to allow cross-examination on this issue violated his Sixth Amendment right to confront the witness.

Petitioner presented this claim on direct appeal. (ECF No. 10-2 at 87–113.) The First DCA affirmed his conviction without comment, which constitutes an adjudication on the merits. (*Id.* at 164); *Bruce*, 988 So. 2d at 715. This Court's review is therefore limited to whether the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law

"The Confrontation Clause guarantees criminal defendants an opportunity to impeach through cross-examination the testimony of witnesses for the prosecution." *United States v. Baptista–Rodriguez*, 17

F.3d 1354, 1370 (11th Cir. 1994). The right to cross-examine witnesses is

not, however, absolute. *Delaware v. Van Arsdall*, 475 U.S. 673, 679

(1986). The Supreme Court has held that "trial judges retain wide latitude .

. . to impose reasonable limits on such cross-examination based on

concerns about, among other things, harassment, prejudice, confusion of

the issues, the witness' safety, or interrogation that is repetitive or only

marginally relevant." *Ivy v. Fla. Dep't of Corr.*, 543 F. App'x 923, 928 (11th

Cir. 2013) (quoting Delaware, 475 U.S. at 679). The Confrontation Clause

does not afford a criminal defendant the right to cross-examine a witness

as to irrelevant matters. *Id.* Nevertheless, "the exposure of a witness'

motivation in testifying is a proper and important function of the

constitutionally protected right of cross-examination." *Davis v. Alaska*, 415

U.S. 308, 316–17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496

(1959)).

"[T]he constitutionally improper denial of a defendant's opportunity to

impeach a witness for bias, like other Confrontation Clause errors, is

subject to . . . harmless-error analysis." *Delaware v. Van Arsdall*, 475 U.S.

673, 684 (1986); *see Chapman v. California*, 386 U.S. 18, 24 (1967) (the

harmless error standard requires the appellee to show "beyond a

reasonable doubt that the error complained of did not contribute to the

verdict obtained"). The correct inquiry under that analysis "is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware*, 475 U.S. at 684.

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*

On direct-examination the State elicited testimony from the victim that she had been a crack addict since 2000, had been convicted of a felony or crime of dishonesty six times, and was currently facing criminal charges with penalties of over forty years in prison. (ECF No. 1 at 243–44.) The victim then testified that she had not been offered anything or promised anything in exchange for her testimony in Petitioner's case concerning her pending cases. (*Id.* at 244.)

On cross-examination defense counsel asked if the victim was doing better than yesterday. (ECF No. 10-1 at 263.) The State objected and the parties requested a sidebar, at which time the following discussion took

place:

> Mr. Campbell: Your Honor, I assume he's about to start asking – she was in jail yesterday.
> The Court: She was where?
> Mr. Campbell: In jail and she bonded out yesterday. And it's not relevant.
> Mr. Ward: Why this is particularly relevant is that the State –
> The Court: What, now?
> Mr. Ward: Why this is particularly relevant is that the State addressed the issue of whether or not she's getting some type of benefit as far as her treatment goes among the cases that she has open, on one in particular she's failed to appear four different times. But yet just yesterday the State still agreed to let her still have a bond.
> The Court: I don't think it's appropriate for you to bring that up. It's going to taint this whole trial.
> Mr. Ward: The State opened the door to this issue and it goes to her credibility.
> The Court: Hmm?
> Mr. Ward: The State opened the door to this issue and it goes to her credibility.
> The Court: Well, I think you've already mentioned the fact that she has charges pending.
> Mr. Ward: Uh-huh.
> Mr. Remland: Judge, the State opened the door on credibility. They said that no benefits have been offered to her.
> The Court: I don't think you can mention seeing her yesterday at the jail.
> Mr. Ward: Yes, sir.

(*Id.* at 264–65.)

Defense counsel then elicited testimony from the victim that she currently had seven open charges including one felony and six misdemeanors due to her crack cocaine addiction. (*Id.* at 265.) The victim

also testified on cross examination that she had a prior conviction for a violent charge because she caught her daughter's father "making out" in a car so she rammed into the back of their car with her car. (*Id.* at 266.)

Although the judge limited the scope of cross-examination by ruling that counsel could not mention that he saw the victim at the jail the day before trial, the trial judge neither abused his discretion nor violated the Confrontation Clause. As an initial matter, the judge's ruling did not prevent counsel from asking the victim about alleged favors that she had received in exchanged for testifying. Counsel did not ask for clarification on the ruling or further object to that ruling.

More importantly, counsel's cross-examination brought to the jury's attention that the victim had pending charges, which subjected her to over forty-years in prison if she was convicted. The victim's testimony on cross-examination also allowed the jury to assess the victim's credibility and motivation to lie. Defense counsel had ample evidence from which he could argue effectively that the victim's testimony was not credible and that the victim was motivated to testify for reasons other than the truth. *See Mills v. Singletary*, 161 F.3d 1273, 1288–89 (11th Cir. 1998) (trial judge did not abuse his discretion or violate the Confrontation Clause in limiting cross-examination where cross-examination exposed witness's prior

inconsistent statements and bargain with Florida to the extent that the jury could judge his credibility and defense counsel could argue effectively that the witness's testimony was not credible).

Furthermore, even assuming the judge's ruling violates the Confrontation Clause—which it did not—Petitioner has failed to demonstrate that the error contributed to the jury verdict (i.e., that the error was not "harmless beyond a reasonable doubt"). The jury had ample damaging evidence from which it could evaluate the victim's credibility and motivation to testify, including the victim's criminal history and that the State was currently prosecuting the victim for pending charges on which she faced forty-years imprisonment. Thus, even if there had been error in the court's ruling—which there was not—the error was harmless beyond a reasonable doubt. Petitioner is therefore not entitled to federal habeas relief on ground two.

## C.   Ground Three: "Trial counsel's failure to object to prosecutorial misconduct during closing arguments at trial constituted ineffective assistance in violation of the Fifth, Sixth, and Fourteenth Amendment[s] to the U.S. Constitution."

Petitioner claims that trial counsel rendered ineffective assistance by failing to object to prosecutorial misconduct during closing arguments at trial. Petitioner says the prosecutor "relentlessly" made "improper and

inflammatory comments" including comments on burden shifting, matters outside of the record, personal opinions, and Golden Rule violations. Trial counsel did not object to any of the prosecutor's comments. Petitioner says the jury therefore "received unobjected to inadmissible evidence to consider during deliberations." (ECF No. 1 at 8.)

Petitioner presented this claim in ground eleven of his amended motion for postconviction relief and supplemental motion for postconviction relief. The circuit court denied that claim on the merits:

> I do find from a review of the closing argument that there was at least one objectionable comment made by the prosecutor when a form of a golden rule argument was made as to the weapon. He does say something to the effect that if this was put against your neck it would be a deadly weapon. I think probably the better practice would have been to make an objection at that point in time. However, Mr. Ward said that, you know, one of his normal practices is not to object as a strategy matter. Frankly, whether it was a weapon or not was not a seriously contested matter before the jury. It was basically, it was a consensual matter or it was not a consensual matter. I don't find that those statements had any likelihood to have affected the outcome of the case. It was really a credibility determination between the defendant and the victim. So I don't find that it was ineffective assistance of counsel. It was not an unreasonable strategy decision, and certainly there was no prejudice given the circumstances of the case.

(ECF No. 10-2 at 475–76; ECF No. 10-3 at 67–68.) The First DCA thereafter per curiam affirmed without written opinion. Ground three is therefore exhausted.

As an initial, Petitioner fails to specify what statements the prosecutor made that allegedly were improper. Assuming the alleged comments are the same comments he raised in his amended motion for postconviction relief and supplemental motion, Petitioner has failed to demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established federal law.

For starters, the prosecutor's comments about Petitioner allegedly lying and asking the jury on several occasions whether "that makes sense," does not equate to burden shifting. Nor did the prosecutor provide his own opinion by presenting the state's theory of the case during closing arguments.

Furthermore, the prosecutor did not make comments outside the evidence of record pertaining to male DNA on the victim's cheek because the defense's own expert testified that male DNA was found on the victim's cheek where the perpetrator had bitten her. (ECF No. 10-1 at 301.) It was entirely permissible for the prosecutor to comment on that evidence during closing arguments. Counsel therefore did not render deficient performance by failing to object to these comments.

Finally, with respect to the prosecutor's comment about the deadly weapon, the judge found that counsel's failure to object to the prosecutor's

comment about holding the weapon to the jury's throat was a strategic decision and in any event was not prejudcial. This was not an unreasonable finding because, as the judge explained, whether the six-inch nail was a deadly weapon was not a seriously contested issue compared to whether the sexual encounter was consensual or not. Counsel's strategic decision not to object does not equate to deficient performance or prejudice. *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1295 (11th Cir. 2014) (holding that "[d]ecisions about whether to object . . . are tactical choices consigned by Strickland to a lawyer's reasoned professional judgment," and that "[g]ood lawyers . . . serve their clients best when they are judicious in making objections"); *Mazard v. State*, 649 So.2d 255 (Fla. 3d DCA 1995) ("tactical or strategic decisions of counsel do not justify post conviction relief on the grounds of ineffective assistance of counsel").  But even if it was an issue the state court found that the comment was not prejudicial under the circumstances. The state court's determination on this issue was not an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, ground three does not warrant federal habeas relief.

**D.    Ground Four: "Section 794.0115, Fla. Stat. (2006) remains unconstitutional on its face for vagueness and ambiguity, thus, Bruce's sentence enhancement under that section stands illegal."**

Petitioner says that § 794.0115(4) is unconstitutional and does not apply to him because he does not have a prior conviction described in § 794.0115(2)(2). He therefore argues that he was ineligible for the sentence enhancement.

Respondent argues that because the heading of ground four does not include an "as-applied" challenge to the statute, that Petitioner has abandoned that point. Respondent nonetheless also contends that this issue is without merit.

The Court disagrees with Respondent's assertion that Petitioner abandoned the "as-applied" challenge. It is evident based on the heading of ground four and the supporting facts, that Petitioner challenges the constitutionality of § 794.0115 both facially and as applied. *See Roberts v. Wainwright*, 666 F.2d 517, 519 (11th Cir. 1982) ("[A] court should interpret a pro se petition . . . more liberally than it might interpret a petition by an attorney.").

Nonetheless, Petitioner's claim—as presented—is a state law issue not cognizable on federal habeas review. Nothing in ground four suggests

that Petitioner challenges the constitutionality of § 794.0115 under *federal* law as opposed to *state* law. Notably, while Petitioner says he raised this claim on direct appeal following re-sentencing, nothing in his *pro se* appellate brief, including the appendix, references federal law or the United States Constitution. This issue is therefore a state law issue not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 120–21 (1982) (a violation of a state statute or rule of procedure is not in itself a violation of the federal constitution); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (the limitation on federal habeas review applies with equal force when a petition, which truly involves only state law issues, is "couched" in terms of alleged federal constitutional violations); *see also Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993 (federal habeas review "is no occasion for considering the facial constitutionality of [a state] statute; such elective speculation is better left to the law reviews"); *Sanders v. McNeil*, No. 8:05-CV1354-T27TBM, 2008 WL 1909166, at *11–12 (M.D. Fla. Apr. 30, 2008) (facial challenge to the constitutionality of a Florida statute warranted no relief because the constitutionality of a state statute under a state constitution is a matter of state law not cognizable on federal habeas review).

Even assuming, however, Petitioner's claim is liberally construed as a federal claim, the claim is unexhausted and procedurally defaulted. As discussed, Petitioner's claim on appeal after remand for re-sentencing was not presented as a federal claim. This claim is also procedurally defaulted because Petitioner cannot raise this claim in a second direct appeal. The procedural default cannot be excused because Petitioner has not demonstrated either cause or prejudice or that enforcing the procedural default would result in a fundamental miscarriage of justice.

Finally, even if this claim were construed as a federal claim and further assuming the claim was exhausted, the claim nevertheless has no merit. The First DCA determined that the statute applied to Petitioner because he was convicted for sexual battery with a deadly weapon and because—based on the plain language of the statute—no prior conviction was necessary. Petitioner has failed to demonstrate that this determination was contrary to or an unreasonable application of clearly established federal law. Ground four should therefore be denied.

**E.      Ground Five: "Counsel's failure to convey a plea offer, and otherwise failure to advise Bruce that the state could seek sentencing enhancement using section 794.0115, Fla. Stat. (2006) constituted ineffective assistance in violation of the Sixth Amendment to the U.S. Constitution.**

Petitioner claims trial counsel failed to convey to him a ten-year plea

offer from the state. He also says he was never informed that § 794.0115 subjected him to a 25-year minimum mandatory if convicted. Petitioner argues that he would have taken the plea deal had he known about the minimum mandatory.

This issue is only partially exhausted. Petitioner claims in ground eight of his amended motion for postconviction relief that counsel failed to convey to him a plea offer from the state.[8] The circuit court denied this claim:

> I simply reject Mr. Bruce's testimony. I think he's lying in here today, or doesn't remember it correctly, I accept Mr. Ward's testimony. It was very specific, very notated. And aside from that, Mr. Bruce said he would not have accepted any plea that included a sex offender designation, which was part of the offer that was made. So that allegation is disproven. There is no ineffective assistance of counsel, nor any prejudice.

(ECF No. 10-3 at 66.) The First DCA thereafter affirmed without written opinion.

Petitioner did not argue, however, that counsel rendered ineffective assistance of counsel for failing to inform him that § 794.0115 subjected him to a 25-year minimum mandatory. While Petitioner raised a similar issue in ground nine of his amended motion for postconviction relief by

---

[8] In his amended motion for postconviction relief, however, Petitioner claimed that the State had offered him a three-year plea deal.

arguing that he was denied due process because the *State* failed to provide him with notice of its intent to seek an enhanced penalty, Petitioner never argued to the state court that trial counsel failed to advise him of the minimum mandatory under § 794.0115. Petitioner cannot raise this issue at this juncture in the state courts so his claim pertaining to counsel's failure to advise him of the minimum mandatory under § 794.0115 is procedurally defaulted. The procedural default cannot be excused because Petitioner has not demonstrated either cause or prejudice or that enforcing the procedural default would result in a fundamental miscarriage of justice.

With respect to his claim that counsel was ineffective for failing to convey a plea offer, Petitioner has not demonstrated that the state court's decision was contrary to or involved an unreasonable application of clearly established law. The court found counsel's testimony was credible that he conveyed a ten-year plea deal to Petitioner prior to trial but that Petitioner rejected the deal and that counsel never extended a plea deal to Petitioner that did not include some type of sexual designation. (ECF No. 10-3 at 38–39, 66.) Petitioner has not shown that this factual determination was "objectively unreasonable." Petitioner also testified that he would not have accepted a plea deal that included some type of sexual designation. (*Id.* at 14.) Petitioner has therefore failed to demonstrate either deficient

performance or prejudice under *Strickland*. Ground five does not warrant

federal habeas relief.

## F.    Ground Six: "Trial counsel's failure to object to the jury verdict as contrary to the weight and sufficiency of the evidence constituted ineffective assistance in violation of the Sixth Amendment to the U.S. Constitution."

Petitioner says that there were three "pivotal" issues in this case: (1)

whether a six to eight inch nail constituted a deadly weapon; (2) whether

Petitioner actually used this alleged deadly weapon in furtherance of

sexual battery; and (3) whether Petitioner intended to use the nail.

Petitioner argues that if counsel had challenged the weight and sufficiency

of the evidence to sustain his conviction the trial court could have

dismissed the charges in their entirety or, at a minimum, reduced the

conviction because there was no deadly weapon used.

Petitioner presented this claim in grounds thirteen and fourteen of his

amended motion for postconviction relief. With respect to ground thirteen in

which Petitioner claimed trial counsel failed to argue the sufficiency of the

evidence, the Court found the claim was baseless because trial counsel

did in fact move for judgment of acquittal both at the close of the state's

case in chief and at the close of the evidence. The trial court also denied

ground fourteen:

> [A]lthough he doesn't use the language, essentially the
> language he's talking about is a motion for new trial language.
> Certainly was not ineffective assistance of counsel to have
> failed to file a motion for new trial. Based upon the facts
> presented to the Court, it was a credibility determination. There
> would have been no basis for the Court granting a motion for
> new trial. I don't find it was ineffective assistance of counsel,
> nor prejudice.

(ECF No. 10-3 at 68.) The First DCA then per curiam affirmed without

written opinion.

The state court's decision was neither contrary to nor an

unreasonable application of clearly established federal law. As the state

court correctly found, counsel did indeed move for judgment of acquittal.

(ECF No. 10-1 at 269–70, 308.) It is axiomatic that counsel could not have

been deficient for doing what Petitioner says he should have done.

Similarly, the circuit court found that there would have been no basis

for granting a new trial because the conviction came down to a credibility

determination, which was within the province of the jury. Thus, there was

no basis for counsel to move for a new trial. Trial counsel was not deficient

and there was therefore no prejudice to Petitioner. Ground six should be

denied.

**G.**  **Ground Seven: "Bruce maintains that the state singled him out for prosecution by using an arbitrary standard while not generally proceeding against other similarly-situated persons in violation of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution."**

Petitioner claims that in "virtually every case that [he] could locate and identify involving a conviction under section 794.011(3), Fla. Stat. (2006) since his conviction the state did not pursue enhancement under section 794.0115, Fla. Stat. (2006)." (ECF No. 1 at 25.) Thus, he alleges that the State arbitrarily chose to prosecute him more aggressively than other similarly-situated persons, which "constitutes a troubling disregard for the equal protection clause of the Fourteenth Amendment." (*Id.*)

Petitioner concedes that he did not exhaust his state remedies pertaining to this claim, but argues that he did not discover this claim until after the postconviction proceedings.. (ECF No. 1 at 25.) Regardless of when Petitioner "discovered" his claim, Petitioner must still provide the state courts an opportunity to resolve the alleged issue before raising the issue in a federal habeas petition. At this juncture, however, Petitioner's claim would be procedurally barred in state court, and therefore procedurally defaulted in this Court. Even though Petitioner appears to assert this claim based on "newly discovered evidence," Petitioner is not entitled to a second direct appeal. Moreover, discovery other cases during

legal research and comparing those cases to his case is not "newly discovered evidence" that would enable Petitioner to now bring this claim in state court. *See* Fla. R. Crim. P. 3.850(b)(1).

Although Petitioner argues that his procedural default should be excused because appellate counsel failed to raise this issue on appeal, Petitioner failed to present that claim as a standalone claim in state court. Accordingly, that claim is itself unexhausted and procedurally defaulted. Finally, because Petitioner has failed to demonstrate cause and prejudice for his procedural default on the ineffective assistance of appellate counsel claim, his ineffective assistance of appellate counsel claim cannot serve as cause for his procedurally defaulted claim here. Nor has he demonstrated that a fundamental miscarriage of justice would arise by enforcing the procedural default.

In addition to all of these shortcomings, this claim also fails on the merits. A cognizable claim under the Equal Protection Clause requires a prisoner to "demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) (quoting *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929,


932–33 (11th Cir. 1986) (per curiam)). Petitioner does not allege that his discriminatory treatment was based on some constitutionally protected interest such as race. Moreover, simply because he was prosecuted under the same statute as other prisoners, without any other reference to the race, ethnicity or circumstances of the other cases, falls woefully short of establishing that Petitioner is similarly situated to those other prisoners. Ground seven should therefore be denied.

## H.    Ground Eight: "The cumulative effect of any two or more of the grounds submitted to this Court in this Petition warrants relief under federal law."

Finally, Petitioner argues that the cumulative effect of the claims in his Petition gives rise to federal habeas relief.

This claim is unexhausted because it was never raised in state court. Although Petitioner argued in ground fifteen of his amended motion for postconviction relief that the cumulative errors of counsel constituted ineffective assistance of counsel, that claim is legally distinct from the instant claim and did not fairly present the claim in this case to the state court.

Fair presentation of a claim to the state court means that the allegations and supporting evidence must offer the state courts "a 'fair opportunity' to apply *controlling legal principles* to the facts bearing upon

his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)

(emphasis added) (citing *Picard v. Connor*, 404 U.S. 270, 276–77 (1971).

The exhaustion requirement is not satisfied if a petitioner presents new

legal theories or factual claims in his federal habeas petition that were not

presented to the state court. *See Anderson v. Johnson*, 338 F.3d 382,

386–87 (5th Cir. 2003) ("We have consistently held that a 'petitioner fails to

exhaust state remedies when he presents material additional evidentiary

support to the federal court that was not presented to the state court.'").

Nevertheless, "dismissal is not required when evidence presented for the

first time in a habeas proceeding *supplements*, but does not *fundamentally

alter*, the claim presented to the state courts." *Id.* (emphasis in original)

(quoting *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994)); *Demarest v.

Price*, 130 F.3d 922, 932 (10th Cir. 1997) ("[A]lthough a habeas petitioner

will be allowed to present 'bits of evidence' to a federal court that were not

presented to the state court . . . evidence that places the claims in a

significantly different legal posture must first be presented to the state

courts.").

Petitioner's claim here involves the cumulative effect of claims

pertaining to more than just ineffective assistance of trial counsel. The

state court never had the opportunity to consider whether the cumulative

effect of any two or more grounds asserted in the Petition warrants relief under federal law. This claim is therefore unexhausted and procedurally defaulted.

Despite Petitioner's assertion that his procedural default should be excused because appellate counsel failed to raise this issue on appeal, Petitioner nevertheless failed to present that claim as a standalone claim in state court. Thus, his appellate counsel claim is also unexhausted and procedurally defaulted. Finally, because Petitioner has failed to demonstrate cause and prejudice for his procedural default on the ineffective assistance of appellate counsel claim, his ineffective assistance of appellate counsel claim cannot serve as cause for his procedurally defaulted claim here. Petitioner also has not demonstrated that a fundamental miscarriage of justice would arise by enforcing the procedural default.

Lastly, even assuming this claim was exhausted and sufficiently pled—which it was not—it is nevertheless without merit. As this Court has explained,

> cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); *Mullen v. Blackburn*, 808 F.2d

1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); *see also United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); *United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000); . . . *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998); *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); *United States v. Conteh*, 234 Fed. App[']x. 374 (6th Cir. 2007).

*Ballard v. McNeil*, 785 F. Supp. 2d 1299, 1336–37 (N.D. Fla. 2011).

Petitioner cannot show error, however, with respect to at least two of his individual claims. None of the alleged errors in this case deprived Petitioner of effective assistance of counsel or a fundamentally unfair trial. Accordingly, ground eight should be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Accordingly, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that**:**

1.     The petition for writ of habeas corpus, ECF No. 1, should be **DENIED**.

2.     A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 27th day of February 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**